# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MEDTRONIC, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 23-2261-DDC-KGG |
| vs. | ) |
| | ) Related Case: No. 17-2060-DDC-KGG |
| BECTION, DICKINSON AND | ) |
| COMPANY, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM & ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL

Now before the Court is Medtronic, Inc.'s Motion to Compel Compliance with a subpoena *duces tecum*, issued to non-party Becton, Dickinson and Company ("BD"), in connection with a *qui tam* action pending in the District Court for the District of Kansas, *U.S. ex rel. Thomas Schroeder v. Medtronic, Inc., et al.*, No. 2:17-cv-2060-DDC-KGG. (Doc. 1-1.) Having reviewed the submissions of the parties, BD's objections are **sustained in part** and Medtronic's motion is **granted in part**.

## BACKGROUND

Plaintiff United States of America ("USA"), *ex rel.* Thomas Schroeder ("Relator") has sued Defendants Medtronic, Inc. ("Medtronic"), Covidien L.P. ("Covidien"), Hutchison Regional Medical Center ("HRMC") and Wichita

Radiological Group, P.A. ("WRG") under the False Claims Act, 31 U.S.C. § 3729, alleging that Defendant's Medtronic and Covidien "paid illegal remuneration to induce purchase of medical devices." (Case No. 17-2060-DDC-KGG, Doc. 318, at 1.)  Relator further alleges that Medtronic employees were rewarded for marketing or encouraging the "overuse" and "off label" use of Peripheral Disease devices. (*Id.*)

The underlying action, brought by Thomas Schroeder, the relator in that case, is a former employee of BD and served as an Area Vice President of Sales, and before that, as a Regional Sales Manager for BD.  (Doc. 1-1, at 4.)  "BD and Medtronic are direct competitors" in the field of medical sales.  (Doc. 3, at 8.)  BD employed Relator during the early portion of the underlying action, but had no part in Relator's decision to file the lawsuit.  (*Id.*)  Medtronic has attempted to subpoena BD for over a year.  (*Id.*)  BD agreed to produce some of the documents requested, after Medtronic retained separate counsel to serve and deal with litigation arising from the subpoena.  (*Id.*)

The present motion arises from Medtronic's subpoena for emails and personnel files from BD, in connection with the underlying action.  (Doc. 6.)  This Motion to Compel seeks compliance with the subpoena by BD within the District of New Jersey, BD's principal place of business.  (Doc. 1.)  Pursuant to Federal Rule of Civil Procedure 45(f), the United States District Court for the District of

New Jersey transferred the Motion to the Issuing Court, the United States District

Court for the District of Kansas on the 7th day of June 2023.  (Doc. 7.)

Medtronic is seeking two categories of documents and communications from

BD:

- o   Emails that concern BD's sales representatives'
  interactions and communications with the relevant
  hospitals; BD's sales practices pertaining to the relevant
  hospitals and medical devices; or Schroeder's
  supervision of BD's sales staff, particularly Brown and
  Clinkscales; and Schroeder's communications with the
  sales staff concerning the underlying action.  (Doc. 1-3,
  at 121-124.)

- o   Personnel files of the BD sales representatives who
  ultimately worked for Schroeder prior to his termination
  from BD: Lloyd, Clinkscales, and Brown.  (*Id*.)

(Doc. 6, at 6-8.)  Medtronic contends they are entitled to discovery concerning

these two categories due to their relevance to Relator's allegations.  (Document 1-

1, at 10-11.)  BD opposes the requests.  (Doc. 3.)

## ANALYSIS

### I.   Standards for Discovery.

Federal Rule of Civil Procedure 45 governs motions to compel compliance

with subpoenas served on non-parties.  ***KPH Healthcare Servs. v. Mylan N.S.***, No.

20-2065-DDC-TJJ, 2023 WL 1795537, at *5 (D. Kan. Feb. 7, 2023).  The serving

party may seek compliance with the subpoena by filing a motion to compel

production of the documents under Rule 45(d)(2)(B).  (*Id*.)  Circumstances under

which a court must quash or modify a subpoena are set forth by Rule 45(d)(3),

which includes when the subpoena "requires disclosure of privileged or other

protected matter, if no exception or waiver applies," and when the subpoena

"subjects a person to undue burden."  (*Id*.)

"The scope of discovery under a subpoena is the same as party discovery

permitted by Fed. R. Civ. P. 26."  (*Id*., at 6.)  The requested information must

therefore be nonprivileged, relevant, and proportional to the needs of the case to be

discoverable.  ***Holick v. Burkhart***, No.16-1188-JTM-KGG, 2018 WL 372440, at

*2 (D. Kan. Jan. 11, 2018).  Discovery requests must be relevant on their face.

***Williams v. Bd. of County Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000).

Relevance is to be "broadly construed at the discovery stage of the litigation and a

request for discovery should be considered relevant if there is any possibility the

information sought may be relevant to the subject matter of the action."  ***Smith v.***

***MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D. Kan. 1991).

Once this low burden of relevance has been established, the legal burden

regarding the defense of a motion to compel resides with the party opposing the

discovery request.  *See* ***Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 661,

662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based

on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears

the burden to support the objections).  Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

## II.     Timeliness.

BD contends the motion to compel is untimely under D. Kan. Local Rule 37.1(c), which states any discovery-related motion must be filed within 30 days of the default or service of the objection, or within 30 days after the movant knew or reasonably should have known the potential dispute.  (Doc. 3, at 9.)  The court may excuse filing later than 30 days if the movant shows diligence in attempting to resolve the discovery dispute at issue.  D. Kan. Local Rule § 37.1(c).  After the two parties' last attempt to resolve the discovery dispute on March 22, 2023, Medtronic filed the motion on April 27, 2023.  (Doc. 3, at 10.)  Medtronic's motion to compel was transferred from New Jersey to Kansas on June 8, 2023.  (Doc. 7.)  Medtronic has shown diligence in attempting to resolve the discovery dispute.  (Doc. 6, at 9-10.)  Given the additional procedural steps to file the motion out of district and the relatively short delay, the Court finds this motion to be timely.

## III.     Conflict of Interest.

BD asserts that the subpoena issued by Medtronic creates a conflict of interest between BD and its counsel, thus violating the Kansas Rules of Professional Conduct.  (Doc. 3, at 10.)  BD is also a current client of Medtronic's counsel of record from the underlying action – Frederickson & Byron and Shook, Hardy & Bacon.  According to BD, this violates Rule 1.7 of the Kansas Rule of Professional Conduct.  (*Id.*)  Rule 1.7 states a "lawyer shall not represent a client if the representation involves a concurrent conflict of interest" which exists if "the representation of one client will be directly adverse to another client," among other circumstances.

Medtronic contends that this is a non-issue because it retained separate counsel (Sylvia Penner of Penner Lowe Law Group, LLC) to issue the subpoena and litigate any issues arising from the subpoena.  (Doc. 6, at 10.)  Separate counsel was not, however, initially retained by Medtronic for this purpose.  Rather, Ms. Penner was only retained after Medtronic initially issued, then withdrew, a subpoena to BD in February 2022 when the potential confulct of counsel was discovered.  According to Medtronic, the retention of Ms. Penner now avoids any conflict of interest between BD and Medtronic's counsel in the underlying action. (*Id.*, at 10-11.)  Medtronic also argues that its counsel in the underlying action is adverse to the Relator, not BD.  (*Id.*, at 11.)

That stated, BD has not moved to disqualify Medtronic's counsel.  Rather,

BD requests that Medtronic's motion to compel compliance with subpoena be

denied to "eliminate the issue."  (*Id.*, at 12.)  BD does not, however, cite any legal

authorities for such a result.  The Court's research did not uncover any such

authority.  The Court finds that while there may be other remedies available to BD

as a result of the likely conflict, denial of Medtronic's motion in its entirety is not

appropriate.  It is unnecessary for the Court to resolve the ethical issue raised in the

motion.

**IV.     Personnel Files.**

Medtronic is seeking production of employee personnel files regarding

Lloyd, Clinkscales, and Brown.  (Doc. 6, at 8.)  The Tenth Circuit has urged courts

to exercise caution in determining whether non-party personnel files should be

disclosed, stating the relevance of documents should be firmly applied and

narrowly targeted to documents that are relevant to claims or defenses in the case.

***Goracke v. Atchison Hosp. Ass'n***, No. 17-2664-JAR, 2018 WL 4030563, at *1 (D.

Kan. Aug. 23, 2018) (citations omitted).  Key witnesses, including employees who

"played an important role in the decision or incident giving rise to the lawsuit,

including witnessing the events giving rise to the lawsuit" are often deemed

relevant and discoverable regarding personnel files.  (Id., at 6.)

BD contends Medtronic failed to identify a legitimate need for such files. (Doc. 3, at 13-14.)  Medtronic states that Schroeder contends the three employees are "key witnesses" in the underlying action, and due to Schroeder's possible influence, the information on the personnel files is necessary to test the credibility of the witnesses and Schroeder.  (Doc. 6, at 8.)  The Court is not satisfied with Medtronic's reasoning for such discovery, as Brown, Clinkscales, and Lloyd do not appear to be "key witnesses" having not witnessed any events giving rise to the lawsuit in the underlying action nor having any first-hand knowledge of alleged violations in the underlying action.  (Doc. 1-3, at 75-96.)  Medtronic has not met their burden of establishing relevance, therefore the Court denies Medtronic's request.

## V.      Requests in Connection to Subpoena

Next, BD asserts that the motion to compel does not seek an order in connection with any specific request in the Subpoena regarding the emails, and that the email requests are vague.  (Doc. 3, at 14-15.)  However, Medtronic specifically requests in the Subpoena: email communications between Schroeder, Clinkscales, and Brown with the relevant hospitals; emails between sales representatives concerning, relating to, or referencing the relevant doctors, medical devices, and medical providers; and email communications between the sales representatives and Lloyd concerning the underlying action.  (Doc. 1-3, at 121-122.)  These

requests in the Subpoena cover the emails sought in the motion to compel.  The

motion to compel also narrowed the email requests down to the alleged relevant

sales staff as well as the relevant hospitals in the underlying action, leading the

Court to conclude the requests are not vague.

## VI.    Documents Obtainable from Defendants

BD argues their communications with the relevant hospitals and information

showing why the hospitals may have chosen Medtronic's devices rather than BD's

should be obtained from the defendants in the underlying action.  (Doc. 3, at 16.)

If the court finds that the "discovery sought is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient,

less burdensome, or less expensive," then "the court must limit the frequency or

extent of discovery…"  Fed. R. Civ. P. 26(b)(2)(C)(i).  BD, however, has failed to

establish that the documents requested are obtainable from another source that is

more convenient, less burdensome or less expensive.  (Doc. 3, at 16.)  While

Defendants in the underlying action may have access to such requests, BD has

already collected, reviewed, and complied with some of Medtronic's requests.

(Doc. 3, at 5.)  Therefore, BD's objection on these grounds are overruled.

## VII.   Internal Discussions.

BD also contends that emails concerning their internal discussions regarding

sales efforts with the relevant hospitals, Schroeder's supervision of BD's sales

staff, and any related analysis of its devices or competing devices are irrelevant

and unduly prejudicial to BD's competing interest.  (Doc. 3, at 16.)  Medtronic

argues that these internal communications are highly relevant as they "go directly

to Medtronic's ability to prove it was not engaged misconduct" and show why

hospitals chose their product instead of BD's product.  (Doc. 6, at 6-7.)  The Court

disagrees with Medtronic.  BD's internal communications about their own sales

efforts, devices, and presentations are not relevant, nor are emails concerning

Schroeder's supervision, considering the underlying action is focused solely on

Medtronic's sales efforts and the alleged violations stemming from those efforts.

## VIII.   Proportionality

BD contends the requested emails, a subset of 1,200 emails, is

disproportionate.  (Doc. 3, at 17-18.)  When considering proportionality, "no single

factor is designed to outweigh the other factors in determining whether the

discovery sought is proportional, and all proportionality determinations must be

made on a case-by-case basis." *Lawson v. Spirit Aerosystems*, No. 18-1100-EFM-

ADM, 2020 WL 1813395, at *17 (D. Kan. Apr. 9, 2020).  The Court disagrees as

the subset has already been collected and reviewed by BD, and limited due to

relevance as seen above.  (Doc. 3, at 7.)

## IX.    Undisputed Requests.

Medtronic correctly notes that BD does not dispute the relevance of emails

between BD's sales representatives and the relevant medical providers, as well as

Schroeder's internal communications with his sales representatives concerning the

underlying action.  (Doc. 6, at 6.)  BD also does not address the relevance of the

requested emails of internal discussions between Schroeder and his sales

representatives concerning conversations they had with the pertinent hospitals and

health care providers regarding Medtronic.  (Doc. 3.)  Therefore, the Court finds

that BD has waived any objection to the three categories of emails mentioned

above.  The requests are granted by the Court.

## X.     Protective Order

Lastly, BD expresses a concern regarding potential proprietary information

that will be contained in the documents produced to Medtronic.  (Doc. 3, at 17.)

However, the existing protective order in the underlying action provides adequate

protection of such information.  (Doc. 1-3, at 160.)  Furthermore, BD may use the

"Confidential – Attorney's Eyes Only" protection, which limits disclosure of such

information to specifically designated representatives.  (Case No. 17-2060-DDC-

KGG, Doc. 103, at 3.)  The Court overrules BD's objection.

## VIII.  Conclusion.

The Court thus **sustains** BD's objections to the personnel files, emails

concerning BD's internal communications regarding sales practices pertaining to

the relevant hospitals and medical devices, and internal emails concerning

Schroeder's supervision of BD's sales staff.  The Court **grants** Medtronic's motion

to compel production of emails that concern BD's sales representatives'

interactions and communications with the relevant hospitals including sales efforts,

internal discussions between Schroeder and his sales representatives concerning

conversations they had with the pertinent hospitals and health care providers

regarding Medtronic, and Schroeder's communication with the sales staff

concerning the underlying action.  The motion to compel is **granted** in part and

**denied** in part.

    **IT IS THEREFORE ORDERED** that Medtronic's Motion to Compel

(Doc. 1) is **GRANTED IN PART** and **DENIED IN PART**.

    **IT IS SO ORDERED.**

    Dated this 6th day of July, 2023, at Wichita, Kansas.

                          s/ KENNETH G. GALE
                          HON. KENNETH G. GALE
                          U.S. MAGISTRATE JUDGE